Belknap
No. 79-240

## GERRITY CO., INC.

v.

## LACONIA SAVINGS BANK

May 5, 1980

*Nighswander, Lord, Martin & KillKelley,* of Laconia (*Walter L. Mitchell* orally), for the plaintiff.

*Normandin, Cheney & O'Neil,* of Laconia (*Paul L. Normandin* orally), for the defendant.

DOUGLAS, J. In this case we are asked to interpret RSA 447:12-a (Supp. 1979), which sets forth priority rules relating to construction mortgages and mechanic's and materialmen's liens.

In February 1978, Roger Chouinard asked the Laconia Savings Bank to finance the construction of a home on certain land in Moultonboro. The bank approved the loan with the understanding that Mr. Chouinard would make a down payment of $15,000 to purchase the land and the bank would supply $42,350 in construction funds. On the date of the loan closing, March 2, 1978, Mr. Chouinard did not produce the entire $15,000. Laconia Savings therefore advanced $6,000 from Mr. Chouinard's construction loan account and paid that amount to Granite State Savings Bank in exchange for a discharge of the prior mortgage. The discharge, a deed from the seller to Mr. Chouinard, and the mortgage to Laconia Savings were all promptly recorded. On March 16, 1978, Laconia Savings paid from Mr. Chouinard's construction loan account another $2,000, this time to the seller, John Cotney. This money represented a portion of the balance due Mr. Cotney on the March 2 sale.

As of March 16, 1978, the plaintiff, Gerrity Co., Inc., had not supplied any building materials to the Moultonboro property. Through the summer, however, Gerrity supplied, but did not receive payment for, $7,849 worth of materials. The plaintiff then sued Mr. Chouinard, placed a mechanic's lien on the property and obtained a judgment.

In October, 1978, Laconia Savings advanced an additional $9,350 for payment due certain suppliers and contractors. In connection with this disbursement the bank received from Mr. Chouinard an affidavit stating that the suppliers and contractors had completed their work and been paid. RSA 447:12-a (Supp. 1979).

On October 30, 1978, Mr. Chouinard filed a voluntary petition in bankruptcy. As a result of his failure to make the payments on his construction mortgage loan, Laconia Savings foreclosed on

February 26, 1979. The subsequent sale brought $19,000, of which only $231 remained for distribution to lien creditors other than the bank. From this amount, the plaintiff was awarded $189. It then sued the bank for the $7,660 that remained unpaid on its bill for materials supplied. The legal issue at trial was whether the plaintiff had priority over the bank with regard to funds disbursed before the plaintiff's lien attached. The Master (*Robert Carignan,* Esq.) ruled in favor of the bank. We reverse and remand.

This case turns on RSA 447:12-a (Supp. 1979), which provides in pertinent part:

> Mechanic's and materialmen's liens secured by attachment shall have precedence and priority over *any construction mortgage.* For the purposes of this section *a construction mortgage shall mean any mortgage loan made for the purpose of financing the construction,* repair or alteration of any structure on the mortgaged premises where the lien secured by such attachment arises from the same construction, repair or alteration work. Provided that such attachment shall not be entitled to precedence as provided in this section to the extent that the mortgagee shall show that the proceeds of the mortgage loan were disbursed either toward payment of invoices from or claims due sub-contractors and suppliers of materials or labor for the work on the mortgaged premises, or upon receipt by the mortgagee from the mortgagor or his agent of an affidavit that the work on the mortgaged premises for which such disbursement is to be made has been completed and that the sub-contractors and suppliers of materials or labor have been paid for their share of such work.

(Emphasis added.) In our opinion, this language places the plaintiff's materialmen's lien prior to the bank's mortgage with regard to the $8,000 in sale proceeds represented by the $6,000 and $2,000 payments made on March 2 and March 16 to the previous mortgagee and the seller.

The bank points out that the payments in question were made for purposes other than financing construction. It contends that the payments were therefore not construction mortgage advances within the meaning of the statute and that the statute does not apply to them. We disagree.

■ RSA 447:12-a (Supp. 1979) defines "construction mortgage" as any mortgage loan made for the purpose of financing construction. The term "loan," as used in the statute, clearly refers to the initial agreement according to which the bank is obligated to make subsequent disbursements; it does not refer to the disbursements themselves. *See Potts v. Grand Lodge A.O.U.W.*, 270 Ill. App. 327 (1933). Agreements are made for the purpose of financing; individual payments are made merely to pay suppliers of goods and services. The term "construction mortgage," as it applies to the present case, necessarily refers to the agreement between Mr. Chouinard and Laconia Savings by which the bank was obligated to pay out funds. It follows, therefore, that if the $8,000 in question was paid out pursuant to the parties' agreement, and if the agreement was made for the purpose of financing construction, the payments were made pursuant to a "construction mortgage." This is true even though the payments were made to parties who had not supplied construction-related goods and services.

■ There is no question that the $8,000 was disbursed according to the parties' agreement; the money was paid directly out of Mr. Chouinard's construction mortgage account. It is also clear from the record that the bank, at the time of the agreement, intended that the entire loan principal be used to pay construction costs. We therefore hold that the $6,000 and $2,000 payments made on March 2 and 16, 1978, were made pursuant to a "construction mortgage."

The bank argues, alternatively, that the statute should be read to affect only construction mortgage disbursements made subsequent to attachment of the mechanic's lien in question. Such a reading, however, is contrary to the clear language of the law. We have already stated that the term "construction mortgage" refers to a loan agreement by which a bank will disburse funds to pay construction costs. If plaintiff's lien has "precedence and priority over any construction mortgage" loan, it must certainly have priority over disbursements made subsequent to the loan agreement.

■ According to RSA 447:12-a (Supp. 1979) as it is interpreted in this opinion, it is clear that the plaintiff can now reach the sale proceeds represented by the $6,000 paid to Granite State Savings. *L. M. Sullivan Co., Inc. v. Essex Broadway Savings Bank*, 117

N.H. 985, 380 A.2d 1087 (1977). The reason is that the bank made no showing and produced no affidavit with regard to the $6,000 payment that could suspend the operation of the statute's priority rule. *Id.* at 990, 380 A.2d at 1091. As to the $2,000, we note that when the bank paid Mr. Cotney that sum, it received from Mr. Chouinard an affidavit stating that "the work on the mortgaged premises for which the $2,000 disbursement . . . is to be made has been completed and the suppliers of materials and labor and subcontractors have been paid for their share of such work." Had the bank actually believed that the $2,000 was being used to pay construction-related costs, the affidavit would shield the bank from the plaintiff's lien's priority. RSA 447:12-a (Supp. 1979). It is uncontroverted, however, that Mr. Muzzey, the bank representative who arranged Mr. Chouinard's loan, knew that the $2,000 would be used against the purchase price of the land. Indeed, the bank's check is made out to Mr. Cotney. Under such circumstances, Mr. Chouinard's affidavit cannot alter the general rule of priority as set forth in RSA 447:12-a (Supp. 1979).

We hold that Gerrity's lien has priority over the bank's mortgage to the extent of $7,660.

*Reversed and remanded.*

All concurred.