Hillsborough-southern judicial district
No. 93-427

BRUCE LEWIS d/b/a LEWIS COMPANIES

v.

SHAWMUT BANK, N.A.

September 29, 1994

*Gormley, Mayer & Gormley, P.C.,* of Nashua (*Arthur O. Gormley, III* on the brief and orally), for the plaintiff.

*Jordan, Gall and Buchanan, P.A.,* of Nashua (*Edward A. Jordan* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiff, Bruce Lewis d/b/a Lewis Companies, a subcontractor, appeals the decision of the Superior Court (*Dalianis,* J.) that the defendant, Shawmut Bank, N.A., had priority over the plaintiff's mechanic's lien with respect to all the proceeds from the foreclosure of the mortgaged premises. We reverse and remand.

The plaintiff, a subcontractor of G.M. Holdings (G.M.), provided a water booster station and incidental labor, material, and services for G.M.'s development of approximately 160 acres of land in Raymond. In order to acquire this land, G.M. conveyed two mortgages: one for $420,000 to Brian and Adela Griset, and one for $537,000 to Cobb, Inc.

On April 20, 1988, the Arlington Trust Company, predecessor to the defendant, issued a commitment letter for a $2,000,000 loan to

G.M. and its principals, Brian Griset and Kevin Price. On May 10, 1988, Griset and Price signed the commitment letter, thereby creating an enforceable loan agreement. The loan agreement purported to grant a "first mortgage land loan," but otherwise was consistently replete with references to the loan as a "construction loan." In particular, the first line of a paragraph describing the primary terms of the loan reads: "A. Type: Construction loan." The security was to be a first mortgage on the real estate to be developed. The agreement provided that $1,200,000 would be disbursed promptly, $138,000 was to be held back for soft costs, $522,000 held back for road and site work, and $140,000 held back for the construction of two homes. At the closing, $1,200,000 was disbursed to G.M. Of this amount, G.M. paid Cobb, Inc. $521,384, and Adela Griset $225,000, thereby discharging all other mortgages on the property. Later, Arlington Trust and/or its successor, the defendant, disbursed additional funds totaling $730,000 to G.M. primarily to pay for site work, a model home, and soft costs. The last disbursement was requested on January 11, 1989.

The plaintiff completed work on December 30, 1988, and requested payment of $60,000. Since G.M. refused to pay, the plaintiff perfected a mechanic's lien on the site subsequent to the last disbursement. The plaintiff obtained a judgment against G.M. on October 18, 1989, for $60,000. After G.M. defaulted on the Arlington Trust loan, the defendant foreclosed on June 4, 1991. The foreclosure sale yielded $565,001. The plaintiff sued the defendant, claiming it was entitled to satisfy its mechanic's lien out of the foreclosure proceeds. The superior court held that the defendant enjoyed priority with respect to the full $565,001. The plaintiff appealed.

■ The general rule of priority in New Hampshire is "race-notice," *i.e.*, a purchaser or creditor who records without notice of a prior unrecorded interest has the senior lien. *See Amoskeag Bank v. Chagnon*, 133 N.H. 11, 14, 572 A.2d 1153, 1155 (1990). An exception to the general rule, however, exists for mechanic's liens. RSA 447:12-a (1991) (current version at RSA 447:12-a (Supp. 1993)). Both parties rely upon the 1991 version of the relevant statute. Accordingly, for purposes of this opinion, we do as well. In pertinent part, that statute states:

> [A mechanic's lien] shall have precedence and priority over any construction mortgage. For the purposes of this section a construction mortgage shall mean any mortgage loan made for the purpose of financing the construction,

repair or alteration of any structure on the mortgaged premises where the lien secured by such attachment arises from the same construction, repair or alteration work. Provided that such attachment shall not be entitled to precedence as provided in this section to the extent that the mortgagee shall show that the proceeds of the mortgage loan were disbursed either toward payment of invoices from or claims due subcontractors and suppliers of materials or labor for the work on the mortgaged premises, or upon receipt by the mortgagee from the mortgagor or his agent of an affidavit that the work on the mortgaged premises for which such disbursement is to be made has been completed and that the subcontractors and suppliers of materials or labor have been paid for their share of such work.

RSA 447:12-a (1991). The legislative purpose in enacting this statute relative to construction attachments was to provide for special treatment for mechanic's liens in determining priority status so that laborers could get paid for their services. *See* N.H.S. JOUR. 1020 (1971) (comments of Sen. Morrissette). The statute only provides priority over prior mortgages based on *construction* loans. Therefore, if the defendant's loan is regarded as a "mixed" loan (*i.e., its purpose is to finance not only construction, but also land acquisition or discharge of mortgages on land*), then, under the race-notice rule of priority, the defendant would enjoy priority with respect to non-construction disbursements. Even if the loan were regarded as a pure construction loan, the defendant would still have priority with respect to those disbursements made to pay subcontractors and traceable in one of the two ways provided in the statute.

Accordingly, the defendant would be entitled to all the foreclosure proceeds if: (1) the loan was "mixed" and non-construction disbursements plus construction disbursements properly traced as payments to subcontractors exceeded $565,001; or (2) the loan was a pure construction loan and disbursements properly traced as payments to subcontractors exceeded $565,001. The trial court found that the defendant was entitled to all the proceeds under either theory. First, focusing on the use of much of the loan proceeds to discharge existing mortgages on the land, the court found that the loan was mixed, and that disbursements used to discharge the Adela Griset and Cobb, Inc. mortgages exceeded the amount of the foreclosure proceeds. Alternatively, assuming a pure construction loan, the trial court found that disbursements traceable to subcontractors exceeded the foreclosure proceeds.

The plaintiff first argues that the trial court erred in ruling that the loan was a mixed loan. We agree. Admittedly, in some colloquial sense the loan was "mixed" inasmuch as, at the disbursement level, a considerable portion of the loan was used not for construction, but instead to discharge prior mortgages on the land. The trial court appeared to focus on this disbursement level in concluding that the loan was mixed. *Gerrity Co., Inc. v. Laconia Savings Bank,* 120 N.H. 304, 307, 414 A.2d 1278, 1280 (1980), however, makes clear that for purposes of RSA 447:12-a priority, the inquiry as to the type of loan is focused on the agreement level, not the disbursement level. In *Gerrity,* we were asked whether a mechanic's lien had priority over $8,000 of a prior bank mortgage based on disbursements used to acquire the land. *Id.* at 306, 414 A.2d at 1280. The loan agreement between the borrower and the bank provided for $42,350 to finance construction. At closing, however, the borrower could not come up with the full down payment to buy the land, so the bank disbursed $6,000 of the $42,350 to allow the purchase and closing to be accomplished. *Id.* at 305, 414 A.2d at 1279. Later the defendant paid another $2,000 from the construction loan account to the seller. Notwithstanding that at the disbursement level the proceeds were used for non-construction purposes, we nonetheless treated the $8,000 as part of the construction mortgage because the disbursement was pursuant to a loan agreement made solely for the purpose of financing construction. *Id.* at 307, 414 A.2d at 1280.

■ "The interpretation of a contract is a question of law to be determined by focusing on the language of the written contract, as it reflects the intent of the parties." *BankEast v. Michalenoick,* 138 N.H. 367, 369, 639 A.2d 272, 273 (1994). Looking exclusively to the enforceable loan agreement, as *Gerrity* requires, we are unable to objectively perceive any other purpose of the loan than to finance construction. The agreement specifically refers to the type of loan as a "construction loan," and that term appears no fewer than five other times in the agreement. Further, the agreement contains numerous references to construction and development of the property.

The defendant argues that the mixed nature of the loan is clear from several provisions of the agreement, in particular its first sentence, which announces a commitment to grant "a first mortgage land loan." There is no other reference, however, in the nine-page agreement to the loan as a "land loan," and in light of the remainder of the document, we conclude that the quoted phrase refers to the intent that the loan be secured by a first mortgage on the land. Nor do other provisions of the agreement

highlighted by the defendant compel an objective interpretation as a mixed loan: the allocation provision "$1,200,000 heldback" with the term "heldback" crossed-out indicates that $1,200,000 was to be disbursed promptly, but it does not indicate the purpose of the disbursement; and, although the agreement provides that there shall be a first mortgage on the land, it does not indicate that there are existing mortgages to be discharged or specify how they are to be discharged. Accordingly, we treat the loan as a pure construction loan, and thus, the defendant will enjoy priority only with respect to disbursements properly traceable to subcontractors.

■ RSA 447:12-a (1991) is explicit as to what type of evidence is necessary to establish that disbursements are traceable as subcontractor payments. In order to avoid the priority of a mechanic's lien,

> the mortgagee shall show that the proceeds of the mortgage loan were disbursed either toward payment of invoices from or claims due subcontractors and suppliers of materials or labor for the work on the mortgaged premises, or upon receipt by the mortgagee from the mortgagor or his agent of an affidavit that the work on the mortgaged premises for which such disbursement is to be made has been completed and that the subcontractors and suppliers of materials or labor have been paid for their share of such work.

In other words, the mortgagee must show that the disbursements either were made directly to subcontractors as payment, *see L.M. Sullivan Co., Inc. v. Essex Broadway Sav. Bank,* 117 N.H. 985, 990, 380 A.2d 1087, 1091 (1977), or were made to the mortgagor after receiving an *affidavit* from the mortgagor stating that subcontractors had been paid. While the evidence in this case may well support a finding that more than $565,001 of disbursements is in some sense traceable to the payment of subcontractors, priority is afforded only to those disbursements traceable by either of the two methods described in the statute, *i.e.,* disbursement checks payable to subcontractors, or disbursement checks payable to the mortgagor coupled with prior affidavits of payment. The record in this case contains no evidence that disbursements to G.M. were in response to *affidavits* attesting to payments made by G.M.; accordingly, the defendant has priority only for those disbursements made directly to subcontractors. The record, however, does not support a finding that any disbursements were made *directly* to subcontractors. We conclude that the plaintiff's mechanic's lien has priority over the defendant's rights to the

foreclosure proceeds. Accordingly, we reverse and remand to the trial court for a calculation of any interest or costs to be assessed.

*Reversed and remanded.*

All concurred.