In re BODWELL DEVELOPMENT
TRUST, Debtor.

BODWELL DEVELOPMENT
TRUST, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORP., As Liquidating Agent for First
Service Bank for Savings, and Robie
Construction Co., Inc., Defendants.

Bankruptcy No. 93–13153–JEY.
Adv. No. 94–1070–JEY.

United States Bankruptcy Court,
D. New Hampshire.

Aug. 3, 1995.

Daniel Callaghan, Devine, Millimet &
Branch, P.A., Manchester, NH, for Debtor.

Jennifer Rood, Backus, Meyer & Solomon,
Manchester, NH, for FDIC (First Service
Bank).

Douglas McIninch, Manchester, NH, for
Robie Construction, et al.

*MEMORANDUM OPINION*

JAMES E. YACOS, Chief Judge.

This adversary proceeding was brought by
the debtor as plaintiff to determine the con-
flicting claims to a fund of $250,000 being
held by the debtor from the sale of real
property assets that had previously been the
subject of a failed construction contract.
The debtor is a mere stakeholder in this
regard. The parties in interest are the

FDIC acting for the Bank that had been the construction lender on the project and various unpaid subcontractors on the project.

As a result of a series of prior hearings and orders the disputes have been winnowed down to one remaining dispute between the FDIC and Robie Construction Co., Inc. (hereinafter "Robie"). Robie's claim is in the amount of $108,525.00. The FDIC has a lien claim far in excess of the fund in question and claims that it is entitled to the entire fund to the exclusion of the Robie Construction claim. Alternatively, the FDIC contends that even if it is not entitled to priority generally against Robie it nevertheless is entitled to reimbursement of real property taxes that it advanced, in the amount of $117,153.81, from the fund in question, in priority to any distribution to Robie.

The pertinent facts are included in the Findings of Fact made by this Court on April 27, 1995 (Court Doc. No. 37). The Court heard oral argument of counsel, based upon the foregoing Findings of Fact, on June 30, 1995 to consider the appropriate application of law to the facts as found.

### THE STATUTES INVOLVED

The pertinent statutory provisions under New Hampshire law, as applicable in the 1988–1989 relevant time frame pertinent to this case, were as follows:

**447:5 Subcontractors.** If a person shall by himself or others perform labor or furnish materials to the amount of $15 or more for any of the purposes specified in RSA 447:2, 447:3 and 447:4 and in RSA 453, by virtue of a contract with an agent, contractor or subcontractor of the owner, he shall have the same lien as provided in said sections, provided, that he gives notice in writing to the owner or to the person having charge of the property that he shall claim such lien before performing the labor or furnishing the material for which it is claimed.

**447:6 Notice.** Such notice may be given after the labor is performed or the material is furnished, and said lien shall be valid to the extent of the amount then due or that may thereafter become due to the contractor, agent or subcontractor of the owner. The account is required under RSA 447:8 may also be given at the time said notice is given.

**447:9 Duration.** The lien created by RSA 447:2–7, inclusive, shall continue for 90 days after the services are performed, or the materials, supplies or other things are furnished, unless payment therefor is previously made, and shall take precedence of all prior claims except liens on account of taxes.

**447:10 How Secured.** Any such lien may be secured by attachment of the property upon which it exists at any time while the lien continues, the writ and return thereon distinctly expressing that purpose.

**447:12–a Attachment Priority.** Such attachment shall have precedence and priority over any construction mortgage. For the purposes of this section a construction mortgage shall mean any mortgage loan made for the purpose of financing the construction, repair or alteration of any structure on the mortgage premises where the lien secured by such attachment arises from the same construction, repair or alteration work. Provided that such attachment shall not be entitled to precedence as provided in this section to the extent that the mortgagee shall show that the proceeds of the mortgage loan were disbursed either toward payment of invoices from or claims due subcontractors and suppliers of materials or labor for the work on the mortgaged premises, or upon receipt by the mortgagee from the mortgagor or his agent of an affidavit that the work on the mortgaged premises for which such disbursement is to be made has been completed and that the subcontractors and suppliers of materials or labor have been paid for their share of such work. Any agreement waiving the precedence provided by this section shall be enforceable only upon like showing by the mortgagee. The precedence provided by this section shall not apply to wage claims of employees working for wages under an employer-employee relationship, as defined in RSA 275:42. A mortgagor or his agent making a wilfully false affidavit hereunder shall be guilty of

a misdemeanor if a natural person, or guilty of a felony if any other person.

### DISCUSSION

The legal issues involved in this case address the question of whether the Robie contract in question and the statutory language should be construed to mean that Robie should have filed a notice of lien as to each component of site lot work under the contract, after it was completed and was not paid, or whether it was permissible for Robie to wait until the last work was done on the last component of that contract and then could file a lien for any and all unpaid components.[1]

The Robie contract covered all the site work to be done on the project in question. Under the Robie contract Robie was contractually obligated to perform all that site work and could have been sued for breach of contract and nonperformance, had it failed to perform on any one of the lots, notwithstanding the fact that it performed on the others. The developer could have sought damages for delay in the other work on the project by virtue of Robie's breach of the contract to do all the site work on the project. Likewise the developer could have been sued had the developer defaulted or breached the obligation to have Robie do all the site work on the project.

There are no New Hampshire cases dealing with the question of whether the statute in question should be construed to define the last date of work on the contract in terms of the last work physically done or whether the statute should be construed to refer to the last work done on each component of a contract that might be determined to be a severable contract and not an entire or continuous contract. In the case of *Diamond Match Co. v. Trust*, 98 N.H. 97, 99, 95 A.2d 142 (1953), the Supreme Court of New Hampshire upheld the trial court's holding that a mechanic's lien claimant's implied contract was "entire and continuous" when the construction

materials were supplied at intervals of less than 90 days on an open account. However, that case did not involve the present context of a construction loan and a construction developmental project.

■ The context of a construction project in my judgment is material to appropriate application of the "entire or continuous" contract analysis as compared to "severable" contract analysis, in that to construe a contract you have to take into consideration the realities of construction lending practices and developer financing practices. A developer needs to get a construction lending commitment but the construction lender is not going to commit to fund the entire amount of the money unless it is shown that the project is moving forward appropriately. Therefore subcontractor contracts on such projects often have "progress payment accounting" features that show how much is to be charged for the work on each lot. Given the context, the fact that the Robie contract had separate pricing for the work on individual lots does not diminish from the conclusion that in the real world of construction financing and building it was an entire contract, understood to be so by both the developer and the subcontractor. I believe this to be true notwithstanding the fact that the construction lender required periodic progress reports to continue advancing monies.

I do not think that cases dealing with "entire or continuous" compared to "severable" contract issues, outside the construction lending context, can be applied en masse to this particular situation. For one thing the legislature has recognized that mechanic lienholders are in a unique situation in which normal rules of priority of liens, given priority by notice or time of recording, will be overridden if a construction lender does not take advantage of certain procedural mechanisms to assure that the mechanic's lien people are not left unpaid as it continues to advance funds.[2]

---

1. Robie actually had two contracts but each contract covered a number of lots on which it was required to do site work for the owner and developer and each of the contracts had at least one lot upon which work was not finished within 90 days of the date Robie filed its lien. For

simplicity I'll just refer to the "Robie contract" since the legal issues are the same.

2. NH Rev.Stat.Ann. § 447:5 in effect relegates the construction lender to a position subordinate to the mechanic's lien claimants unless the con-

In sum, I believe the legal question of distinguishing an "entire or continuous" contract from a "severable" contract must be viewed in light of this particular factual context and in light of the laws passed by the New Hampshire legislature recognizing that special rules are necessary in a construction lending situation.

■ In construing this statute, I am conscious of the fact that the New Hampshire legislature passed the legislation in question as remedial law to protect subcontractors and others who are not by and large particularly skilled or sophisticated in legal language. The law should be construed in terms of its purpose and in terms of the audience of which it was addressed. *Quality Carpets v. Carter,* 133 N.H. 887, 889, 587 A.2d 254 (1991) ("we will construe statutes so as to effectuate their evident purpose"); cf. *Gleason v. Thaw,* 236 U.S. 558, 560, 35 S.Ct. 287, 288, 59 L.Ed. 717 (1915) (bankrupt law is a "prosy thing intended for ready application to the everyday affairs of practical business"). In that light, I believe that a party in Robie's position would understand the statutory language of N.H.Rev.Stat.Ann. 447:9 ("... 90 days after the services are performed ...") to mean that they had an obligation to notice their mechanic's lien within 90 days after the last work was done on the total contract upon which they were obligated to perform up to the last lot site.

That being the case the Court will conclude that judgment should be entered in favor of Robie on that point and that Robie will be determined to prime the FDIC, acting for the failed Bank and construction lender, to the extent of its claim of $108,525.

■ The FDIC argues, however, that even if Robie has a superior position under the mechanic's lien statute, the FDIC is entitled to reimbursement from Robie to the extent that Robie was benefitted by the advances made by the Bank to pay accumulating property tax liens. As indicated that totalled $117,153.81, which according to the FDIC would act as an offset to Robie's claim, allowing the FDIC to reach the entire $250,000 fund in question.

The FDIC argues that if the Bank did not advance the funds for the unpaid taxes, the resulting priority tax liens would have primed Robie's lien position. See N.H.Rev. Stat.Ann. 447:9. That being so, the FDIC argues that it is unfair to permit Robie to have the benefit of those advance tax payments without reimbursing the FDIC for the same.

Robie counters that the FDIC can obtain a superior position superior under this contention only by adding the advances to pay unpaid property taxes to its claim of lien pursuant to its construction mortgage and note and mortgage documents. Since N.H.Rev.Stat.Ann. 447:11 gives special priority to Robie's attachment under its mechanic's lien claim and since N.H.Rev.Stat.Ann. 447:12–a adds specifically that a mechanics lien attachment "shall have precedence and a priority over any construction mortgage" Robie contends that the special protection and priority given mechanic's lien claimants overrides any equitable or subrogation arguments that might be made. Robie points out that while the FDIC has cited case law dealing with disputes between senior and junior secured lenders as to reimbursement for property taxes advanced to protect the property from tax seizure, none of the cases cited involve a situation involving a mechanic's lien claimant. See e.g. *Garland v. Federal Land Bank of Springfield,* 101 N.H. 260, 140 A.2d 568 (1958); *Morrison v. Manchester,* 58 N.H. 538 (1879). Neither party has cited a case dealing with this precise issue in either New Hampshire or any other jurisdiction.

On balance, and in absence of any controlling authority, the Court concludes that the special protection and remedial law encompassed in the mechanic's lien legislation in New Hampshire should be construed to provide priority for an unpaid subcontractor such as Robie, as against a construction lending mortgagee who failed to avail itself of the procedural mechanisms to preserve its priority position, even as to that portion of the construction lender's lien claim attributable to advances to pay unpaid property taxes.

struction lender takes advantage of those proce-

dures requiring affidavits or direct payments, etc.

### CONCLUSION

The Findings of Fact previously entered (Court Doc. No. 37) and the foregoing conclusions of law in the present opinion, determine all remaining issues pending in this adversary proceeding. According, a separate final judgment shall be entered providing for a priority claim in the amount of $108,525 in favor of the defendant Robie Construction Co., Inc., to be paid from the $250,000 fund being held by the plaintiff, with balance remaining in said fund to be paid over to the FDIC.[3]

---

3. The entry of the final judgment in accordance with this opinion will be deferred for 30 days in view of the contingent Constitutional question raised by the FDIC earlier in these proceedings. If the FDIC intends to pursue that contention it shall file a motion on or before *September 5, 1995,* to set the matter down for appropriate briefing and for a further hearing to be scheduled on the FDIC's motion. If the Constitutional issue is to be pursued the FDIC shall give the requisite notice to the Attorney General to the State of New Hampshire and to the Attorney General for the United States of America as may be appropriate.