Bodwell v. FDIC                          CV-96-021-B    07/05/96
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


In re Bodwell Development Trust               Civil No. 96-021-B

   Bodwell Development Trust

      v.

   Federal Deposit Insurance
   Corporation as Liquidating Agent
   for First Service Bank;
   Robie Construction, et al.


                            **O R D E R**


      This bankruptcy appeal involves the competing claims of two

secured creditors to a fund of $250,000 remaining from the sale

of the debtor's real estate project.  The Federal Deposit

Insurance Corporation ("FDIC"), as successor in interest to the

First Service Bank for Savings ("the Bank"), bases its claim on

the Bank's mortgage and the FDIC's payment of delinquent real

estate taxes on the Bodwell property.  Robie Construction, Inc.

seeks payment for its work on the project secured by a mechanic's

lien attachment.  The bankruptcy court held that Robie's

mechanic's lien attachment was timely as to all of its unpaid

work and had priority over both the FDIC's construction mortgage

and its claim for reimbursement of the taxes paid.  For the reasons that follow, I affirm.

## I.  BACKGROUND

The background facts are taken from the bankruptcy court's factual findings.[1]  The parties do not dispute the bankruptcy court's factual findings on appeal, nor could they as they have not provided a complete transcript or a full record of the proceedings below.  See In re Abijoe Realty Corp., 943 F.2d 121, 123 n.1 (1st Cir. 1991).

In October 1987, Bodwell Development Trust purchased a multi-lot subdivision in Manchester.  Bodwell intended to complete single family houses on twenty-five lots in the first phase of the development and to build a planned unit development on the remaining parcel in the second phase.[2]  The first phase of

---

[1]  The bankruptcy court made factual findings in both its findings of fact order dated April 28, 1995, and in its memorandum opinion, In re Bodwell Development Trust, 187 B.R. 63 (Bankr. D.N.H. 1995).  The findings of fact order references particular numbered exhibits that were not appended to the document and were not included in the record on appeal although some of the same documents seem to have been submitted as part of the "defendant's exhibits."

[2]  The second phase of the project is not at issue in this appeal.

the project was financed by the Bank in a series of mortgages with security agreements executed in 1987 and 1988. Bodwell hired Lexro Development Company as its general contractor.

Robie Construction contracted with Lexro to provide materials and labor for site work on the Bodwell project. The first contract, dated April 14, 1988, (the April contract), specified work on lots 11, 12, 13, 14, 23, and 25 listing separate prices for each lot totalling $25,625.00. The second contract, dated May 19, 1988, (the May contract), specified work and prices for lots 5, 6, 7, 8, 9, and 10 for a total of $82,901.75. Robie last worked on a lot listed in the April contract on December 15, 1988, and last worked on a lot listed in the May contract on December 14, 1988. Robie was not paid for its materials and labor and brought suit against Bodwell and Lexro in Hillsborough County Superior Court on February 3, 1989.

Robie recorded an _ex_ _parte_ mechanic's lien attachment on February 21, 1989,[3] in the amount of $200,000 on Bodwell's first

_____

[3] The bankruptcy court's factual findings state that Robie obtained _ex_ _parte_ permission from Hillsborough County Superior Court on February 22, 1989, to record the attachment. _See_ _Findings_ _of_ _Fact_ No. 19. The bankruptcy court also found that Robie filed its _ex_ _parte_ attachment on February 21, 1989, referencing "Exhibit 7," which is not included in the record on appeal. _See_ _Findings_ _of_ _Fact_ No. 35. As the parties do not

3

phase lots numbered one through fourteen, sixteen, eighteen through twenty-six, and twenty-eight. The attachment was recorded within ninety days of work done on only one lot listed in the April contract and two lots in the May contract. On November 6, 1989, the state court granted Robie a final default judgment against Bodwell, and Robie recorded a writ of execution against Bodwell on January 10, 1990.

The FDIC was appointed liquidating agent for the Bank in March 1989. Thereafter, the FDIC paid delinquent real estate taxes to the City of Manchester for the years 1988 through 1990 on the lots in the first phase of the project after Robie recorded its mechanic's lien attachment. Bodwell filed a Chapter 11 bankruptcy petition on November 8, 1993. At the time Bodwell filed its petition, the FDIC's claim against Bodwell for the Bank's first phase mortgages exceeded one million dollars. The first phase lots in Bodwell's development project were sold pursuant to the reorganization plan for a total of $625,000.00.

Bodwell brought an adversary proceeding in the bankruptcy court to resolve the claims of several creditors to the proceeds

---

dispute the date or validity of Robie's mechanic's lien attachment, I merely note the apparent inconsistency in the factual findings.

of the sale of the property. The parties submitted a statement of stipulated and disputed facts, and a hearing was held in August 1994. After the hearing, the FDIC filed a motion to reopen the hearing record for new evidence pertaining to the type of mortgage the Bank granted to Bodwell. The bankruptcy court held a hearing on the FDIC's motion in December 1994 and denied the motion to reopen in an oral order.

After the claims of several creditors were resolved, $250,000.00 remained in the fund subject to the FDIC's mortgage claims, which exceed the amount of the fund, the FDIC's claim for payment of real estate taxes of $117,153.81, and Robie's mechanic's lien claim for $108,525.00. The bankruptcy court issued findings of fact dated April 28, 1995, and heard the parties' oral arguments in June. The bankruptcy court issued its memorandum decision on August 3, 1995, in which it determined that Robie's claim, based on its mechanic's lien attachment, was prior to the FDIC's claims for the Bank's mortgages and for payments of real estate taxes on the mortgaged property. The FDIC appeals.

5

## II. <u>ANALYSIS</u>

On appeal, the FDIC contends that the bankruptcy court abused its discretion in denying its motion to reopen the hearing record on the relative priority of its mortgage claims with respect to Robie's claim. The FDIC also contends that the bankruptcy court erred in determining that Robie's mechanic's lien attachment was timely as to work done more than ninety days before the lien was perfected, and by determining that Robie's mechanic's lien attachment was entitled to priority over the FDIC's claims for payment of the delinquent property taxes. I begin with the bankruptcy court's decision not to reopen the hearing record to allow additional evidence.

### A. <u>FDIC's Motion to Reopen the Hearing</u>

A trial court is granted broad discretion in determining whether to reopen the evidentiary record, and its decision is reviewed only for abuse of that discretion. <u>Blinzler v. Marriott Intern., Inc.</u>, 81 F.3d 1148, 1160 (1st Cir. 1996) (citing <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 331-32 (1971)). Fairness is the guiding principle in making and reviewing a decision on reopening the record, and the "trial court abuses its discretion if its refusal to reopen works an 'injustice' in the particular circumstances." <u>Rivera-Flores v.</u>

<u>Puerto Rico Tel. Co.</u>, 64 F.3d 742, 746 (1st Cir. 1995).  In

evaluating the potential for injustice in particular

circumstances, the court should assess whether:

> (1) the evidence sought to be introduced is especially
> important and probative; (2) the moving party's
> explanation for failing to introduce the evidence
> earlier is <u>bona fide</u>; and (3) reopening will cause no
> undue prejudice to the nonmoving party.

<u>Id.</u>; <u>see also</u> <u>Blinzler</u>, 81 F.3d at 1160.  I review the bankruptcy

court's decision only to determine whether it abused its

discretion.

New Hampshire law provides that a mechanic's lien attachment

shall have priority over a construction mortgage.  N.H. Rev.

Stat. Ann. § 447:12-a (1991).  The FDIC stipulated that the each

of the Bank's mortgages to Bodwell was a "Construction Mortgage

and Security Agreement."  The bankruptcy court held a hearing on

the relative priorities of the mortgagee's and mechanic's

lienholders' claims to the Bodwell fund in August 1994.  The FDIC

did not argue or present evidence in its pleadings or at the

hearing that the Bank's mortgages were other than construction

mortgages.

After the hearing but before the bankruptcy court decided

the parties' priorities, the New Hampshire Supreme Court issued

<u>Lewis v. Shawmut Bank</u>, 139 N.H. 50 (1994), in which the court

7

enforced an exception to the priority rule imposed by § 447:12-a when the loan was made for both the land purchase and construction.  The FDIC then moved to introduce evidence that the Bank's mortgage loan to Bodwell was a "mixed" loan intended to finance both the property purchase and project construction arguing only that the record should be reopened because the Lewis decision was a new interpretation of the priority rule.

The bankruptcy court denied the FDIC's motion on the grounds that the Lewis decision did not present a sufficiently new interpretation of the priority statute to justify allowing the FDIC to withdraw its stipulation that the Bank's loans to Bodwell were construction mortgages.  As noted by the bankruptcy court, the decision in Lewis, followed Gerrity Co., Inc. v. Laconia Savings Bank, 120 N.H. 304 (1980), in which the court considered the bank's claim of an exception to the priority rule under § 447:12-a if the mortgage payments were made for purposes other than financing construction.  In Gerrity, the court held that the bank's advancement of funds in part for the mortgagor's land purchase did not exempt that portion of the mortgage from the priority rule in § 447:12-a because the purpose of the loan was determined by the loan agreement, which was to finance construction, not by the disbursements.  Id. at 307.  Although

8

the Lewis decision may have focused attention on the "mixed mortgage" exception to the priority rule and may have clarified the proof necessary to meet the exception, it did not change the law. Therefore, when the FDIC stipulated that the bank's loans were construction mortgages and presented evidence at the August hearing, it should have known the significance of evidence suggesting that the loan agreement was to finance the purchase of the property as well as for construction. Thus, the FDIC did not fall into erroneous and prejudicial stipulations based on a justifiable legal mistake. See, e.g., T I Federal Credit Union v. Delbonis, 72 F.3d 921, 928 (1st Cir. 1995) (parties are not free to extricate themselves from stipulations absent "a clear mistake" or "a manifest injustice"); Wheeler v. John Deere Co., 935 F.2d 1090, 1097-98 (10th Cir. 1991) (stipulation must be based on a reasonable mistake of law for relief to be appropriate).

The FDIC's stipulations may have been erroneous and certainly had a significant effect on the priority of its claim behind Robie's mechanic's lien pursuant to § 447:12-a. In addition, the bankruptcy court acknowledged that reopening the record would not cause unfair prejudice to Robie. Nevertheless, the bankruptcy court decided that it was inappropriate to relieve

9

the FDIC from its stipulations because such stipulations would be of little value to the parties or the court in future cases if a party could avoid the enforcement of a stipulation merely by demonstrating that its decision to enter into the stipulation was based on an incorrect legal judgment. Although I might reach a different conclusion if I were reviewing the matter de novo, the bankruptcy court did not abuse its discretion in balancing the competing interests in the way that it did.

**B. Timeliness of Robie's Mechanic's Lien Attachment**

Under New Hampshire law, a subcontractor, who performs labor or provides materials for construction "by virtue of a contract with an agent, contractor or subcontractor of the owner" and who meets the other statutory requirements, has a lien on the materials, the buildings, and the land where the project is located. N.H. Rev. Stat. Ann. § 447:5 (1991). A mechanic's lien may be secured "by an attachment of the property upon which it exists at any time while the lien continues." N.H. Rev. Stat. Ann. § 447:10 (1991). When Robie obtained its mechanic's lien attachment in February 1989, the mechanic's lien statute provided

that the lien would continue for ninety days[4] after the subcontractor provided services or materials.  N.H. Rev. Stat. Ann. § 447:9 (1991).

Robie filed its attachment after it completed all of the work described in the two contracts, rather than filing attachments as it completed the specified work on each lot.  When the attachment was filed, Robie had worked on only three lots within the preceding ninety days, one lot specified in the April contract and two lots specified in the May contract.  The FDIC argues that Robie's mechanic's lien attachment was untimely and invalid as to the lots not worked on within the statutory ninety day period.

The New Hampshire Supreme Court has not addressed the timeliness of a mechanic's lien attachment in this context. Other jurisdictions generally have held that an attachment filed within the statutory period following the last work on a project is timely as to the property as a whole when the property is owned by a single owner and the construction contract provides for work on a single project although it consists of separate

_____

[4]  The statute was amended effective January 1, 1992, to allow the lien to continue for 120 days.

11

lots or buildings.  See, e.g.  S.K. Drywall, Inc. v. Developers Financial Group, Inc., 819 P.2d 931, 933-35 (Ariz. 1991) (single lien may be filed within statutory period following end of work on a single project under a single contract and discussing cases from other jurisdictions); see also First Nat. Bank v. Hemingway Center Ltd., 846 F. Supp. 186, 189 (D. Conn. 1994) (materials and labor provided for two of three condominium buildings benefitted entire project so that lien was properly recorded on entire property);  Annotation, Mechanic's Lien for Work on or Material for Separate Buildings of One Owner, 15 A.L.R.3d 73, § 11 (1967 and Supp. 1995).  The FDIC does not dispute that the Bodwell development was a single project consisting of a subdivision of individual lots all owned by a single owner.

The FDIC argues, however, that the Robie contracts are divisible and should be construed as individual contracts for the work on each separate lot specified.  Under New Hampshire law, "[i]f the parties gave a single assent to the whole transaction, the contract is indivisible, while it is divisible if they assented separately to several things." In re Trailer and Plumbing Supplies, 133 N.H. 432, 435 (1990) (quotation omitted).

The bankruptcy court found that in the context of construction financing, a developer must get a construction

12

lending commitment and the lender requires proof that the project is moving forward to continue to advance money. As a result, subcontractors' contracts often include "progress payment accounting" features, such as the work and prices specified for individual lots in the Robie contracts, to show what will be charged for work on each lot. The bankruptcy court also found that Robie's contracts covered all of the site work for the Bodwell project, and that Robie was obligated to provide all of the work specified. The court found that Robie could have been sued for breach if it failed to perform any part of the specified work even if it completed all other specifications, and Robie could have sued Lexro if it breached its commitment to Robie for all of the work specified. Bodwell, 187 B.R. at 65.

Thus, while each of the two contracts specified particular work on particular lots, the facts show that the parties agreed to the work specified in each contract as a single transaction. In addition, because Robie was hired to provide all of the site work for the project, the work benefitted the entire project, not just the individual lots. The FDIC has presented no facts to support a contrary conclusion. Under these circumstances, the FDIC's arguments fail, and I affirm the bankruptcy court's

13

decision that Robie's lien attachment was timely filed.

## C.   Priority of Claim for Property Taxes

The FDIC argues that its claim for payment of the delinquent property taxes is entitled to priority over Robie's mechanic's lien claim.  Because the remaining fund of $250,000 is sufficient to pay both Robie's claim of $108,525.00 and the FDIC's property tax claim of $117,153.81, the issue of their relative priority is now immaterial and, therefore, moot.  Accordingly, I need not determine their relative priority.

The FDIC apparently presented a different argument to the bankruptcy court claiming a right to reimbursement from Robie for the amount of the taxes which would completely offset Robie's claim leaving the entire $250,000 fund available to the FDIC.  In re Bodwell, 187 B.R. at 66.  The FDIC has not pressed this argument on appeal.  Therefore, I do not address the bankruptcy court's decision on the question.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is affirmed.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

July 5, 1996

cc:  Jennifer Rood, Esq.
     Douglas McIninch, Esq.
     George Vannah, USBC